UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, and NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION,<br><br>　　　　Plaintiffs,<br><br>　　　　　　- against -<br><br>YING DONG; EASTERN SOURCES, INC.; RJS 59 LLC; 135 ROUTE 59 REALTORS LLC; 131 ROUTE 59 REALTORS LLC; and JOSEPH FUCHS,<br><br>　　　　Defendants. | **COMPLAINT**<br><br>No. 25-cv-5645 |

Plaintiffs State of New York and the New York State Department of Environmental Conservation ("DEC") (collectively, the "State"), by their attorney Letitia James, Attorney General of the State of New York, as and for their complaint, allege as follows, upon information and belief:

## NATURE OF THE ACTION

1. This is an action to recover costs that have been incurred by the State in responding to the releases of hazardous substances into the environment at and from the property located at 135 Route 59 East in Spring Valley, New York (the "Site").

2. At all relevant times, Defendant Eastern Sources, Inc. ("Eastern Sources") operated a commercial laboratory that synthesized compounds for sale to larger chemical companies.

3. On August 1, 2022, defendant Ying Dong, a chemist and an employee of Eastern Sources, improperly disposed of hazardous chemicals, including sulfuryl chloride and pyridine, in the wooded area behind the building on the Site. The disposal immediately caused a chemical explosion, as well as the release of toxic gases and the contamination of the soil. A neighboring business called the fire department upon hearing the explosion, seeing smoke, and smelling a foul odor. One firefighter was overcome by the fumes from the toxic gases and had to be hospitalized, and a hazmat team was dispatched to the Site. A neighboring bicycle shop was evacuated. The adjacent section of Route 59 was closed.

4. In addition to dumping hazardous chemicals in the wooded area behind the building, Dong improperly disposed of various containers that contained, or had previously contained, hazardous chemicals by placing them in the dumpster and garbage bags located on the Site on the same day.

5. Dong's improper disposal of these hazardous chemicals contaminated the soil on the Site and endangered the public.

6. DEC incurred $59,675.00 for its emergency response to the hazardous materials released at the Site. DEC excavated the contaminated soil and containerized hazardous chemicals left in garbage bags and the dumpster.

7. This action seeks recovery of costs that have been incurred by the State in responding to the release of hazardous substances at and from the Site under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601-9675 ("CERCLA"), as amended.

8. When Dong improperly disposed of hazardous substances at the Site, she managed, directed, and/or conducted operations at the Site, including operations specifically related to the disposal of hazardous substances. She is accordingly liable for the State's costs under CERCLA.

9. Eastern Sources managed, directed, and conducted operations at the Site when hazardous waste was disposed of at the Site, including operations specifically related to the disposal of hazardous substances and decisions about compliance with environmental laws and regulations. Eastern Sources is accordingly liable for the State's costs under CERCLA.

10. Defendant RJS 59 LLC purchased the Site in 2015. RJS 59 LLC may have conveyed title to the Site to 135 Route 59 Realtors LLC and/or 131 Route 59 Realtors LLC in 2017. One or more of these entities was the owner at the time of disposal and is the current owner of the Site. It is accordingly liable for State's costs under CERCLA.

11. Defendant Joseph Fuchs is the principal of RJS 59 LLC, 135 Route 59 Realtors LLC, and 131 Route 59 Realtors LLC, and he managed, directed, and conducted operations at the Site when hazardous waste was disposed of at the Site, including operations specifically related to the disposal of hazardous substances and decisions about compliance with environmental laws and regulations. He is accordingly liable for the State's costs under CERCLA.

## JURISDICTION AND VENUE

12. This Court has exclusive jurisdiction over this action, which arises under the laws of the United States, pursuant to 28 U.S.C. §§ 1331 and 2201, as well as 42 U.S.C. §§ 9607 and 9613. The Court also has jurisdiction to enter a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, as well as 42 U.S.C. § 9613.

13. Venue is proper in this District pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) because the release of hazardous substances that gives rise to this action occurred within this District, and the Site is located within this District.

## THE PARTIES

14. Plaintiff State of New York brings this action to recover costs that have been incurred by the State in responding to the release and threatened release of hazardous substances at and from the Site.

15. Plaintiff DEC is an executive agency of the State of New York and is authorized to administer and enforce the New York Environmental Conservation Law.

16. Defendant Ying Dong is an individual residing in Pomona, New York. Dong is a chemist and a former employee of Eastern Sources. Dong improperly disposed of hazardous substances at the Site, as well as managed, directed, and conducted operations related to the disposal of hazardous waste at the Site.

17. Defendant Eastern Sources is a company organized and existing under the laws of New York, and its principal business address at 8 Westchester Plaza,

4

Elmsford, New York 10523.  Eastern Sources managed, directed, and conducted operations related to the disposal of hazardous waste at the Site, and made decisions about compliance with environmental laws and regulations.

18. RJS 59 LLC, 135 Route 59 Realtors LLC, or 131 Route 59 Realtors LLC was the owner of the Site when hazardous chemicals were disposed there in 2022 and is the current owner of the Site.

19. Defendant Joseph Fuchs is the principal of RJS 59 LLC, 135 Route 59 Realtors LLC, and 131 Route 59 Realtors LLC.  Fuchs managed, directed, and conducted operations related to the disposal of hazardous waste at the Site, and he made decisions about compliance with environmental laws and regulations at the Site.

## STATUTORY BACKGROUND

20. CERCLA provides that, when there is a release of hazardous substances into the environment from a facility, certain categories of persons are liable to the State for the costs that the State incurs to respond to the release as long as the State's response actions are "not inconsistent with the national contingency plan."  42 U.S.C. § 9607(a).

21. "Hazardous substances" are defined in 42 U.S.C. § 9601(14) to include substances that the United States Environmental Protection Agency ("EPA") has designated as hazardous pursuant to 42 U.S.C. § 9602.  These substances are listed in 40 C.F.R. § 302.4.

22. A "release" includes spilling, leaching, and disposing "into the environment." *Id.* § 9601(22). The "environment" includes groundwater, surface water, land surface, subsurface strata, and ambient air. *Id.* § 9601(8).

23. A "facility" includes "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9). It also includes buildings, structures, and equipment. *Id.*

24. The term "respond" includes taking "removal" actions, "remedial" actions, and related enforcement activities. *Id.* § 9601(25). A "removal" action includes the "cleanup or removal of released hazardous substances from the environment" as well as the assessment and evaluation of a release. *Id.* § 9601(23). A "remedial" action means "those actions consistent with permanent remedy taken instead of or in addition to removal actions." *Id.* § 9601(24).

25. The "national contingency plan" is set forth in 40 C.F.R. Part 300.

26. The persons liable for response costs under 42 U.S.C. § 9607(a) include: (i) current owners and operators of a facility; and (ii) owners and operators of a facility at the time of disposal of hazardous substances. "Persons" includes individuals and corporations. 42 U.S.C. § 9601(21).

27. 42 U.S.C. § 9613(g)(2) provides that in an action for response costs under CERCLA, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding in any subsequent action or actions to recover further response costs or damages."

## FACTUAL ALLEGATIONS

A.  **The Site**

28.   The Site is located at 135 Route 59 East, Spring Valley, New York, and identified on Rockland County tax map as District 57, Section 56, Block 2, Lot 12.

29.   The Site occupies approximately 0.21 acres and includes a two-story building and a parking area.

30.   RJS 59 LLC purchased the Site in 2015. RJS 59 LLC may have conveyed title to the Site to 135 Route 59 Realtors LLC and/or 131 Route 59 Realtors LLC in 2017. One or more of these entities was the owner at the time of disposal and is the current owner of the Site.

31.   At the time of the August 2022 incident, the building housed approximately four commercial tenants. There are commercial buildings on either side of the Site and residential properties within 800-1000 feet. Behind the south side of the building, there is a driveway and a wooded area.

32.   At the time of the incident, Eastern Sources was a tenant on the Site.

B.  **Eastern Sources' Operations and Contamination of the Site**

33.   Beginning in 2004, Eastern Sources operated a commercial laboratory that synthesized compounds for sale to larger chemical companies. Eastern Sources utilized a variety of hazardous chemicals in its operations. Eastern Sources was owned by David Mendenhall.

34.   Dong was married to Mendenhall until Mendenhall's death in June 2022.

7

35. Shortly after Mendenhall's death in June 2022, Fuchs, a principal of RJS 59 LLC, 135 Route 59 Realtors LLC, and 131 Route 59 Realtors LLC, told Dong that Eastern Sources was not current on its rent and instructed Dong that Eastern Sources needed to vacate the premises within two weeks.

36. Dong then undertook to clear out chemicals that had been stored at the Site by Eastern Sources.

37. On August 1, 2022, Dong improperly disposed of multiple hazardous chemicals at the Site. Specifically, Dong put containers that contained, or had previously contained, hazardous chemicals, including sulfuryl chloride, pyridine, and brucine into the dumpster and garbage bags located on the Site.

38. Dong also poured various chemicals, including sulfuryl chloride, as well as pyridine and possibly diethylamine, onto the ground in the wooded area behind the Site.

39. Thus, Dong and Eastern Sources managed, directed, and conducted operations when hazardous waste was disposed of at the Site, including operations specifically related to the disposal of hazardous substances and decisions about compliance with environmental laws and regulations.

40. Sulfuryl chloride is a colorless liquid with a pungent odor. When sulfuryl chloride is exposed to air or soil, it reacts with the moisture and produces corrosive and toxic gases, including hydrogen chloride and sulfuric acid vapor. Hydrogen chloride is corrosive to the eyes, skin, and mucous membranes. Acute inhalation may cause coughing, inflammation, and ulceration of the respiratory

tract.  Sulfuric acid vapor is corrosive to all body tissues.  Acute inhalation exposure and inhalation of vapor may result in serious lung damage, choking, dyspnea (shortness of breath), respiratory tract irritation, and chest pain.

41.     Pyridine is a flammable liquid with acute inhalation and oral toxicity.  Inhalation of high vapor concentrations may cause symptoms like dizziness, headaches, tiredness, nausea, and vomiting.

42.     Brucine is a combustible solid that is toxic if inhaled, ingested or absorbed through the skin.

43.     Diethylamine is a corrosive chemical, and contact can cause severe skin irritation and burns.  Inhalation of diethylamine can irritate the nose, throat and lungs, causing coughing and/or shortness of breath.  Higher exposures can cause a build-up of fluid in the lungs (pulmonary edema), with severe shortness of breath.  Diethylamine is a flammable liquid and a fire hazard.

44.     EPA has designated sulfuric acid, hydrogen chloride, pyridine, brucine, and diethylamine as hazardous substances. 40 C.F.R. § 302.4.

45.     When Dong poured the chemicals in the woods at the back of the Site, she set off a small explosion that released toxic gases and a foul odor.  Dong did not alert anyone as to what she had done, but tenants of a neighboring business alerted the local fire department when they heard the explosion and saw smoke.  One of the responding firefighters was overcome by the fumes and required hospitalization.

46.     During the emergency response, Route 59 was closed, the building on the Site was evacuated, and the neighboring bicycle shop was evacuated.

## C. DEC Investigation and Cleanup

47. DEC staff went to the Site on August 1, 2022, to observe the condition of the Site. Fuchs was present at the Site at the time, and DEC staff spoke with him. DEC staff explained to Fuchs that the owner of the Site was considered a responsible party and therefore responsible for remediating the Site. DEC staff informed Fuchs that DEC planned to mobilize a contractor to address the contamination by August 2, unless the owner agreed to undertake the remediation.

48. Fuchs initially stated that he would hire a contractor, but later informed DEC that the contractor he chose had refused the job.

49. Fuchs told DEC on August 2, 2022, that he could not afford to conduct a complete clean-up of the Site.

50. Fuchs subsequently hired a contractor to remove the hazardous chemicals that remained inside the building, but he did not address the contamination outside the building.

51. Thus, Fuchs managed, directed, and conducted operations at the Site when hazardous waste was disposed of at the Site, including operations specifically related to the disposal of hazardous substances and decisions about compliance with environmental laws and regulations.

52. Beginning on August 2, 2022, DEC cleaned up the Site, including excavating the contaminated soil where Dong had poured the chemicals, as well as containerizing the hazardous chemicals placed in garbage bags and a dumpster on the Site.

53. Among other things DEC found the hazardous substance brucine in the dumpster, as well as bottles labeled as "pyridine anhydrous" and "sulfuryl chloride."

54. The State incurred a total cost of $59,675.00 for its emergency response to the hazardous materials released at the Site.

**CLAIM FOR RELIEF**
**COST RECOVERY UNDER CERCLA**

55. The State repeats and realleges the allegations in the foregoing paragraphs.

56. The Site is a "facility" as that term is defined in 42 U.S.C. § 9601(9).

57. Buildings, structures, and equipment where hazardous substances were deposited, stored, disposed of, placed, or otherwise came to be located at the Site are also "facilities" under 42 U.S.C. § 9601(9).

58. There have been "releases" of "hazardous substances" as those terms are defined in 42 U.S.C. §§ 9601(14) and (22), at and from the Site, and facilities at the Site, into the environment.

59. Among the hazardous substances that were released into the environment at and from the Site and other facilities at the Site are sulfuryl chloride, pyridine, diethylamine, and brucine ("contaminants of concern").

60. The contaminants of concern contaminated the "environment" within the meaning of 42 U.S.C. § 9601(8).

61. The State incurred costs to "respond," as that term is defined in 42 U.S.C. § 9601(25), to the release of the contaminants of concern at and from the

11

Site, including costs to assess, monitor, evaluate, oversee, and conduct "remedial actions," as that term is defined in 42 U.S.C. § 9601(24).

62. 42 U.S.C. § 9607(a) provides that (i) persons who are current owners or operators of a facility and (ii) persons who were owners or operators at the time that hazardous substances were disposed shall be liable for the costs of removal and remedial actions that are "not inconsistent with the national contingency plan."

63. The response actions that the State has taken to respond to the release of hazardous substances at the Site are not inconsistent with the "national contingency plan." *See* 40 C.F.R. Part 300.

64. All defendants are "persons" within the meaning of 42 U.S.C. § 9601(21).

65. Dong managed, directed, and conducted operations at the Site at the time of disposal, including operations specifically related to the disposal of hazardous substances. Thus, Dong is liable as an operator of the Site within the meaning of 42 U.S.C. § 9607(a)(2).

66. Eastern Sources managed, directed, and conducted operations when hazardous waste was disposed of at the Site, including operations specifically related to the disposal of hazardous substances and decisions about compliance with environmental laws and regulations. Thus, Eastern Sources is an operator of the Site at the time of disposal within the meaning of 42 U.S.C. § 9607(a)(2).

67. RJS 59 LLC, 135 Route 59 Realtors LLC, and/or 131 Route 59 Realtors LLC currently owns the Site and owned the Site when hazardous substances were

disposed at the Site, and thus is the current owner of the Site within the meaning of 42 U.S.C. § 9607(a)(1), as well as the owner of the Site at the time of disposal within the meaning of 42 U.S.C. § 9607(a)(2).

68. Fuchs is the principal of RJS 59 LLC.  He managed, directed, and conducted operations at the Site when hazardous waste was disposed of at the Site, including operations specifically related to the disposal of hazardous substances and decisions about compliance with environmental laws and regulations.  Thus, Fuchs was an operator the Site at the time of disposal within the meaning of 42 U.S.C. § 9607(a)(2).

69. Pursuant to 42 U.S.C. § 9607(a), defendants are strictly, jointly, and severally liable to the State for response costs incurred by the State as a result of the release or threatened release of hazardous substances at or from the Site and facilities at the Site.

## **PRAYER FOR RELIEF**

WHEREFORE, the State requests judgment in its favor and against defendants upon each claim and requests that this Honorable Court enter judgment against defendants:

70. Declaring defendants to be strictly, and jointly and severally, liable to the State under CERCLA for, and awarding to the State, all costs and expenses, including interest, attorneys' fees and other costs of enforcement, incurred by the State in responding to the release or threat of release of hazardous substances at and from the Site and facilities at the Site.

71. Ordering such other and further relief, in law or in equity, as the Court deems just and proper.

Dated: New York, New York
July 9, 2025

          LETITIA JAMES
          New York State Attorney General
          *Attorney for Plaintiffs*

By: _____
          Kelsea K. Suarez
          Special Assistant Attorney General
          Jennifer C. Simon
          Assistant Attorney General
          Environmental Protection Bureau
          Office of the New York State Attorney General
          28 Liberty Street, 19th Floor
          New York, New York 10005